## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

United States of America,

v.                                    Case No. 1:21-cr-426-MLB

Angela Cable,

                Defendant.

_____/

## **ORDER**

In October 2021, a grand jury indicted Defendant Cable and several others, charging them with conspiracy and substantive offenses involving possession with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841.  (*Id*.)  Defendant Cable moved for disclosure of information regarding the United States's agreement with a confidential source, to reveal the identity of the confidential source, and to suppress geolocation data the United States obtained from her cell phone provider pursuant to a search warrant.  (Dkts. 353, 354, 356.)  A Magistrate Judge

issued a report and recommendation saying this Court should deny all three motions.[1]  (Dkt. 509.)  Defendant Cable filed objections.  (Dkt. 514.)[2]

## I.   Background Facts

The affidavit law enforcement included in the search warrant application contains the relevant facts.  According to it, a confidential source told law enforcement he had purchased large amounts of methamphetamine from a group of people in Atlanta.  (Dkt. 356-1 ¶ 13.) Working with the DEA, the source called Defendant Cable on her cell phone so Defendant Cable could conference in a person identified on the call as "Bori" (now identified as Co-Defendant Emmanuel Ruiz) to negotiate a drug transaction.  (*Id.* ¶¶ 16–20.)  The source and Ruiz conversed in coded language.  When the source first called Defendant Cable, he said he wanted to "come down in a few weeks if everything was

---

[1] Although the Magistrate Judge denied Defendant Cable's Motion to Reveal the Deal (Dkt. 509), Defendant Cable challenges the denial in her objections to the report and recommendation (Dkt. 514 at 1–2).  So the Court addresses her arguments and treats the Magistrate Judge's denial as a recommendation.

[2] The Court **GRANTS** Defendant Cable's Motion to Allow Participation in Voir Dire (Dkt. 355).

good," and Defendant responded "Hold on.  Let me find out.  Let me try and call him."  (*Id.* ¶ 16.)

A short time later, Defendant Cable returned to the call, said "he answered," and conferenced in Ruiz.  (*Id.* ¶ 17.)  When the source repeated his request to "come down," Ruiz ask, "For which one?  Green or white?"—which the affiant interpreted as Ruiz asking if the source wanted to buy marijuana (green) or methamphetamine (white).  (*Id.* ¶ 17(a).)  The source said he wanted "[t]he big tires[,] [b]ig ones," and Ruiz responded "[n]ot the ones we can't ever get.  I'll honor the price that I gave you.  Big tires are always here and on point."  (*Id.* ¶ 17.)  The affiant said the reference to "big tires" was a reference to kilograms of methamphetamine.  (*Id.* ¶ 17(a).)  The source responded that some of the "stuff" he had been getting elsewhere was not good, and Ruiz asked "[w]hat did I tell you last time?  55?" to which the source responded "[n]o, you said 5."  (*Id.* ¶ 19.)  Ruiz responded "Okay, okay.  If that's what I told you.  That [sic] what we are going to do."  (*Id.*)  The affiant interpreted this as the source and Ruiz agreeing to a purchase price of $5,000 per kilogram of methamphetamine.  (*Id.* ¶ 19(a).)  The source repeated his request to come down in a few weeks, Ruiz asked "[h]ow many tires are

3

we looking at?", and the source said "10"—an agreement between Ruiz and the source as to the quantity of methamphetamine to be purchased. (*Id.*)  Ruiz ended the call saying "No problem.  We will get them together for you.  I need to go ahead and get the prettiest cars together, wash, and clean them and have them ready for two weeks right . . . Okay, I'll go ahead and take care of that."  (*Id.*)

From this single call, the affiant concluded Defendant Cable was using her cell phone "to facilitate transactions involving drugs" and GPS data from her phone provider would "assist agents in locating and identifying vehicles and the locations that [were] being used as 'stash houses' for illegal drugs and/or drug proceeds."  (*Id.* ¶¶ 22–23.)  Based on that analysis and information regarding the affiant's background and experience, a Magistrate Judge issued a search warrant for geolocation data regarding Defendant Cable's cell phone.

The source placed this call to Defendant Cable on January 22, 2022. (*Id.* ¶ 15.)  Law enforcement obtained that warrant eight days later. (Dkt. 501-1 at 1.)[3]  They investigated a lot more before obtaining the

---

[3] The Magistrate Judge included information about other conversations Defendant Cable had on February 12 and 14, 2020—weeks after law

indictment against Defendant Cable and her co-defendants, but none of that is relevant here.

## II.    Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  The district judge should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted).  For those findings and recommendations to which a party has not asserted

---

enforcement obtained the search warrant at issue.  Defendant Cable objects to the Magistrate Judge's probable cause analysis "to the extent" she considered that information.  (Dkt. 514 at 3.)  The Magistrate Judge merely mentioned those calls in discussing background facts.  She did not mention them in analyzing probable cause, and nothing suggests she considered them in reaching her recommendation on that issue.

objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

Parties filing objections to a magistrate judge's recommendation must specifically identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.*

## III.  Motion for Disclosure of Agreements with Witnesses

The Magistrate Judge concluded the United States was not required—at this time—to reveal the details of any agreements it has with a codefendant, coconspirator, or witness (including the source). (Dkt. 509 at 8–10.)  Defendant Cable objects, saying the United States has not offered any reason (like the risk of harm to a witness) for withholding the information until closer to trial.

The Magistrate Judge properly recognized *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), obligate the United States to disclose any "deal" it has with a witness as well as any other exculpatory or impeachment evidence.  (*Id.* at 8–9.)  But nothing requires the United States to produce it now.  The United States must disclose *Brady* and *Giglio* materials early enough that Defendant

6

Cable can put them to "effective use" in cross examining witnesses or otherwise preparing for trial. *Flores v. Satz*, 137 F.3d 1275, 1278–79 (11th Cir.1998). The United States says it understands its obligations and will comply. The Court has no reason to doubt that representation and thus adopts the Magistrate Judge's recommendation that it deny Defendant Cable's motion for immediate disclosure of agreements with witnesses. As this case approaches trial, Defendant Cable may reassert this motion if necessary.

## IV.   Motion for Disclosure of the Source's Identity

The Magistrate Judge also says this Court should deny Defendant Cable's motion for disclosure of the confidential source. (Dkt. 509 at 13.) Defendant Cable objects, saying the Magistrate Judge erred in weighing each of the so-called *Roviaro* factors. (Dkt. 514 at 2–3.) Defendant Cable offers no explanation for how the Magistrate Judge erred; she simply says it. (*Id.*) This really is nothing more than a general objection and is not very helpful.

The Court disagrees with Defendant Cable's broad assertion. In *Roviaro v. United States*, 353 U.S. 53 (1997), the Supreme Court recognized that, while the United States has the right to keep

confidential the identity of an informant in a criminal case, that right is limited.  *Id.* at 53.  Specifically, the United States must identify an informant's identity if doing so is "relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause." *Id.* at 60–61.  In balancing these competing interests, courts consider "(1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure." *United States v. Flores*, 572 F.3d 1254, 1265 (11th Cir. 2009).  The defendant has the burden of establishing these factors favor disclosure by asserting a "sufficiently specific demonstration of the relevance and potential helpfulness of the informer's testimony." *Rugendorf v. United States*, 376 U.S. 528, 534–35 (1964).

The Magistrate Judge concluded she was not required to conduct this analysis because the United States has said it will call the source at trial, and *Roviaro* only applies when the United States does not intend to do so.  (Dkt. 509 at 11–12.)  In support of this conclusion, the Magistrate Judge—quoting *Banks v. Dretke*, 540 U.S. 668, 697 (2004)—concluded "[t]he issue of evidentiary law in *Roviaro* was whether (or when) the

Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness." (*Id.* at 11.) Defendant Cable does not attack this conclusion, and, even if she did, the Court would adopt the Magistrate Judge's conclusion as it has done regarding nearly identical motions filed by co-defendants Ruiz and Vazquez. (Dkt. 482 at 8–9.)

Even considering the *Roviaro* balancing test, the Court would still not order disclosure. As to the first factor, the source was actively involved in the telephone call with Defendant Cable and Ruiz to negotiate the purchase of methamphetamine. But agents recorded that call. Defendant Cable thus has not shown (or even argued) the extent of the source's involvement in the transaction warrants disclosure. And this case certainly does not present the factual scenario presented in *Roviaro*. For the second factor, Defendant Cable does not identify any relationship between her likely defense and the source's probable testimony. She simply says disclosure is "essential" to the preparation of her defense. (Dkt. 354 at 4.) Again, not very compelling. This allegation does not demonstrate any need for disclosure or show how disclosure would significantly aid Defendant Cable in establishing any defense. As to the

final factor, the United States says it has an interest in withholding the requested information to protect the source, and Defendant Cable does not really challenge that assertion. The Court adopts the Magistrate Judge's recommendation and denies Defendant Cable's motion for disclosure of the source's identity.

## V.   Motion to Suppress Geolocation Evidence

The Magistrate Judge recommends this Court also deny Defendant Cable's motion to suppress the geolocation data collected by her cell phone provider. (Dkt. 509 at 7–17.) Defendant Cable objects, arguing the Magistrate Judge erred in (1) concluding the agent's affidavit established probable cause for the warrant, (2) assessing corroboration and finding the source sufficiently reliable, (3) refusing to find the information too stale to support the warrant, and (4) recommending the good-faith exception to suppression applies in the event the warrant was insufficient. (Dkt. 514 at 3–8.)

### 1.  Probable Cause Analysis

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The acquisition of historical cell-site records (that is,

geolocation data maintained by the cell phone provider) is a search under the Fourth Amendment, so the government must obtain a warrant to access those records. *Carpenter v. United States*, 138 S.Ct. 2206, 2018 (2018). A magistrate judge reviewing a warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the probable cause affidavit, there is a fair probability that law enforcement will find evidence of a crime in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). The affidavit should establish a connection between the defendant and the place law enforcement wants to search and a link between that place and any criminal activity. *See United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed . . . ." *Gates,* 462 U.S. at 250. Courts must give "great deference" to a magistrate judge's decision and uphold a magistrate's findings even in marginal or doubtful cases. *See United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990). "Deference to the magistrate, however, is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). "[R]eviewing

11

courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *Id.* at 915 (internal quotation marks omitted).

The Court agrees with the Magistrate Judge's conclusion that the affidavit established probable cause to believe Defendant Cable was involved with Ruiz in distributing methamphetamine. (Dkt. 509 at 16.) Contrary to Defendant Cable's argument that the affidavit "merely indicates" the source had her phone number and called her "to get in contact with Ruiz" (Dkt. 514 at 4), the affidavit connected her to the distribution of narcotics with Ruiz. The affiant explained that the source said he had previously purchased large amounts of methamphetamine from the drug organization in Atlanta and that Ruiz (a member of the organization) had been intercepted on a wiretap the year before talking about drug transactions. (Dkt. 356-1 ¶¶ 13, 14(a).) So that set the stage.

The affiant then explained the source called Defendant Cable and—without saying anything more than he wanted to come down if "everything was good"—Defendant Cable said she needed to call Ruiz. (*Id.* ¶ 16.) She conferenced in Ruiz who then negotiated the sale of ten

kilograms of methamphetamine.  (*Id*. ¶¶ 16–20.)  Importantly, at the start of the call, the source never mentioned Ruiz or said anything to Defendant Cable other than that he wanted to come down.  Yet she knew exactly what to do—conference in the person who could negotiate the sale of methamphetamine.  And there is no indication her phone dropped off the call after connecting Ruiz.  The affiant then added that, in addition to this call, Defendant Cable's phone had been in contact with Ruiz's phone more than 1,000 times in a two-month period.  All of this provides probable cause to believe, not just that Defendant Cable assisted the source in speaking with Ruiz, but that she knew the purpose of the call was to negotiate the sale of drugs.

The Court thus agrees the affidavit established, first, Defendant Cable's involvement with Ruiz in the distribution of methamphetamine and, second, her use of her cell phone to assist in this illegal activity.  But the affidavit provided no link between her mere use of the cell phone and probable cause to conclude the phone's geolocation data would provide evidence of a crime.  The affidavit alleged GPS data from the phone "will assist agents in locating and identifying vehicles and the locations that [were] being used as 'stash houses" for illegal drugs and/or drug

proceeds." (Dkt. 356-1 ¶ 23.)  The affidavit did not, however, explain any basis for that conclusion.  The Magistrate Judge recognized this assertion by the affiant (Dkt. 509 at 16), but failed to analyze whether any factual allegations supported it.[4]

To obtain a search warrant, law enforcement must establish probable cause to believe—not only that a crime has been committed—but also that evidence of the crime is present in the place to be searched.  *See Martin*, 297 F.3d at 1314.  In this case, that means the affiant was required to link Defendant Cable's geolocation data to the conspiracy in order to search that data.  To obtain a search warrant or wiretap for phone communications, for example, law enforcement must establish, not only evidence that someone is engaged in illegal activity, but also probable cause to believe evidence of that illegal activity will be found in those communications.  *United States v. Booker*, 2013 WL 2468694, at *8 (N.D. Ga. June 7, 2013).  To obtain a warrant for e-mails

---

[4] Defendant Cable likewise does not raise any arguments about whether factual allegations supported the affidavit's conclusion, but instead broadly challenges the Magistrate Judge's finding that the affidavit provided a sufficient factual basis for finding probable cause that she was involved in the drug trafficking conspiracy.  (Dkt. 514 at 3–4.)

or a social media account, law enforcement must show, not only that the person is engaged in illegal activity, but also that evidence of the illegal activity will be found in the e-mails or social media account. *See United States v. Wheat*, 2022 WL 16851663, at *9 (N.D. Ga. Nov. 10, 2022) (adopting finding warrant affidavit established probable cause to believe evidence of crime would be found in e-mails); *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017) (probable cause to search Facebook account found where account listed defendant's occupation as "Boss Lady" at "Tricks R [U]s" thereby linking account to sex-trafficking conspiracy).

The same rule applies when law enforcement seeks—not a search of the phone's contents—but geolocation data. Absent some allegation linking the movement of the phone to evidence of illegal activity, the mere use of a phone to conduct illegal activity does not establish probable cause to believe the location information tracked by the phone will provide evidence of a crime. People can, of course, use cell phones to speak about a crime without their locations providing evidence of the crime. So the mere use of a phone does not establish probable cause that one's movements will provide evidence of a crime.

15

The affidavit includes no factual allegations to suggest Defendant Cable visited stash houses, moved drugs or drug proceeds between locations, or made any other movements as part of the drug trafficking. Merely conferencing together two people on a phone (albeit for illegal purposes) does not make the location from which the call was made (let alone movements while not using the phone) relevant to the investigation. The affidavit needed more factual allegations. It might be as simple as an agent alleging that, in his or her experience, people who play Defendant Cable's role in an organization often move drugs or drug proceeds between locations, visit those locations, or otherwise travel to places connected to the illegal operation. Perhaps a statement that geolocation data is needed to identify the person using the phone would be enough. But none of that exists here. Certainly factual allegations showing a person acts as a courier for the drug trafficking organization would be enough. But that evidence is not here. In a conclusory manner, the affiant characterizes Defendant Cable as a "courier" (Dkt. 356-1 ¶ 14(b)), but provides no basis for that assertion, and the other facts

alleged do not support it.[5]   In the light of this, the Court rejects the Magistrate Judge's conclusion that the warrant application contains sufficient probable cause to support collection of geolocation evidence from Defendant Cable's phone provider.

### 2. Defendant Cable's Other Arguments Against the Warrant

Because the Court concludes the affidavit lacked probable cause to justify the warrant, the Court need not consider Defendant Cable's arguments that the Magistrate Judge erred in assessing corroboration, finding the source sufficiently reliable, and refusing to find the information too stale to support the warrant.   But it has done that analysis anyways and overrules Defendant Cable's objections.

"When determining the existence of probable cause from an informant's tip, an issuing judge must consider the informant's veracity or reliability and basis of knowledge."   *See Ortega v. Christian*, 85 F.3d

---

[5] The Court recognizes that, during the call, Ruiz said, "*We* will get [the tires] together for you.   I need to go ahead and get the prettiest cars together, wash, and clean them and have them ready for two weeks right . . . Okay, I'll go ahead and take care of that."   (Dkt. 356-1 ¶ 20 (emphasis added).)   The Court does not find, however, the vague use of "we" sufficient to infer that Defendant Cable was a courier.   And neither party argues about this pronoun.

1521, 1525 (11th Cir. 1996) (in assessing whether informant's tip rises to the level of probable cause, courts consider totality of circumstances, including informant's veracity, reliability, and basis of knowledge, as well as any independent corroboration of tip). There is no rigid or specific test for this assessment. "The informant's veracity or reliability and his [or her] basis of knowledge do not stand independent of one another; rather, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* (citing *Gates*, 462 U.S. at 233.

The Court agrees with the Magistrate Judge's conclusion that the affiant's failure to include information about the source's prior reliability is not fatal to the warrant. (Dkt. 509 at 17.) As the Magistrate Judge noted, the source's statement that he had previously purchased large amounts of drugs from the Atlanta organization was based on his first-hand knowledge and considered a statement against penal interest. Moreover, his statement was corroborated and his credibility bolstered

by the Ruiz's statements on the conference call Defendant Cable arranged. In her objections, Defendant Cable argues that conversation did not implicate her. (Dkt. 514 at 4–5.) But, for the reasons already stated that simply is not true. That call provides plenty of corroboration for the source and basis for finding him reliable.

Defendant Cable argues the Magistrate Judge erred in rejecting her staleness argument because the affidavit did not identify the date of the source's prior purchase from the Atlanta drug organization. (*Id.* at 8.) Defendant Cable's argument stems from the same refusal to acknowledge the import of the January 22, 2020 call. Regardless of when the source had previously purchased drugs, he negotiated a new transaction with Ruiz (with Defendant Cable's knowing assistance) just eight days before law enforcement obtained the warrant. There is no staleness issue here. *See Martin*, 297 F.3d at 1314.

### 3. Good-Faith Exception to Suppression

Ordinarily, a court must exclude evidence obtained in violation of an individual's rights under the Fourth Amendment. *Id.* at 1312. The exclusionary rule is a judicially created remedy to deter future Fourth Amendment violations. *Id.* "And courts rely on it as a remedy of last

resort, justified only where the deterrence benefits of suppression outweigh the substantial social costs of ignoring reliable, trustworthy evidence bearing on guilt or innocence." *United States v. Lara*, 588 F. App'x 935, 938 (11th Cir. 2014) (internal citations and quotation marks omitted).[6]

The government thus is not barred from using evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral magistrate, even if the search warrant is ultimately found invalid. *See Leon*, 468 U.S. at 923. Given the goal of deterring misconduct, a court should not apply the exclusionary rule unless the application or warrant was so defective or deficient that no reasonably well-trained officer would have relied on it. *Id.* Put differently, the exclusionary rule does not apply when an officer, acting with objective good faith, obtains a search warrant from a neutral magistrate judge and acts within the scope of the warrant. *Id.* at 920–21. Courts have

---

[6] The Court recognizes *Lara* is an unpublished, non-binding opinion but finds it instructive all the same. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

recognized four concrete instances in which the good faith exception does not apply, specifically when: (1) the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) the judicial officer abandons his [or her] judicial role; (3) the warrant so lacks any indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that an officer could not reasonably presume it valid. *Id*. at 923.

As an alternative to her recommendation regarding probable cause, the Magistrate Judge says this Court should apply the good-faith exception to suppression. Defendant Cable objects to that recommendation but offers no explanation, merely saying she "objects to the Magistrate Court's finding that the Leon good-faith exception applies." (Dkt. 514 at 8.) Again, she provides nothing helpful to the Court in assessing her objection. Having reviewed the warrant, the Court concludes that, even if the warrant lacked probable cause, the government would nonetheless be entitled to the benefit of the good-faith exception. There is no evidence the affiant intentionally or recklessly misled the issuing magistrate judge. There also is no evidence the magistrate judge abandoned his or her "judicial role" in issuing the

21

warrant.  Similarly, the affidavit is not so lacking in indicia of reliability or otherwise so facially deficient that no reasonable agent could have believed it valid.  *See Leon*, 468 U.S. at 923.

## VI.  Conclusion

The Court **GRANTS** Defendant Angela Cable's Motion to Allow Participation in Voir Dire (Dkt. 355).  The Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation (Dkt. 509)—rejecting only her conclusion the affidavit provided probable cause to justify the seizure of geolocation data.  Despite that, the Court **DENIES** Defendant Cable's motions to disclose the United States's agreement with any cooperating witness (Dkt. 353), to reveal the identity of the confidential source (Dkt. 354), and to suppress geolocation data from her cell phone provider (Dkt. 356).

**SO ORDERED** this 24th day of October, 2023.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE